

Opinions of the United
States Court of Appeals
for the Third Circuit

2007 Decisions

12-13-2007

# USA v. Nagle

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2851

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Nagle" (2007). *2007 Decisions.* Paper 76.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/76

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-2851

_____

UNITED STATES OF AMERICA,
vs.

NIKOLE NAGLE,
*Appellant*

_____

On Appeal from the United States District Court
For the District of New Jersey
(Crim. No. 04-585)
District Judge: Honorable Garrett E. Brown

_____

Submitted on November 28, 2007

_____

Before: BARRY, FUENTES and GARTH, *Circuit Judges*,
(Opinion Filed:  December 13, 2007)

_____

**OPINION**

_____

GARTH, *Circuit Judge*:

Nikole Nagle ("Nagle") appeals from the final judgment of conviction and

sentence for conspiracy to commit insurance fraud and for making false distress signals to

the U.S. Coast Guard, entered by the District Court on May 25, 2005.  Nagle argues that

the District Court erred in finding that her confession was voluntary and therefore admissible for impeachment. In addition, she claims that her sentence was unreasonable. We affirm both the conviction and the sentence.

## I.

On August 19, 2004, a federal grand jury charged Nagle and her common-law husband Derek Nicholson ("Nicholson") in a two-count indictment with conspiracy to defraud an insurance company and making false distress signals to the U.S. Coast Guard. On December 1, 2004, a jury returned guilty verdicts with respects to both defendants on all counts.

The convictions arose out of the defendants' conspiracy to defraud State Farm Insurance Company by faking Nicholson's death. On July 22, 2003, Nicholson took out a $1 million policy on his life, after being denied an application for a $3 million policy. Four days later, Nicholson disappeared and Nagle claimed that he had drowned while swimming in the ocean.

On August 1, 2003, Nagle filed a claim with State Farm for $1 million. However, the insurance company informed her that it would take several years to dispense the insurance benefits without physical proof of Nicholson's death. Having realized that the fraud conspiracy would be unsuccessful without his dead body, Nicholson decided to reemerge a few days later on August 4, claiming memory loss and that he was kidnaped.

As a result of a federal investigation, both Nicholson and Nagle were arrested on May 12, 2004. Within a few hours of the arrest and having been informed of their rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), both defendants submitted written confessions. At trial, Nagle claimed that her confession was coerced and thus involuntary. The District Court held three hearings on this issue and found that the confession was given voluntarily and therefore admissible. Though Nagle's confession was not introduced in the trial, the Government reserved the right to use her confession as impeachment if she testified in her defense.

On May 25, 2005, Nagle was sentenced to 18 months imprisonment, which was a substantial downgrade from the 41-51 month range under the Sentencing Guidelines. The District Court found that Nagle had extraordinary family circumstances justifying a lower sentence, because Nagle had three young children, one of whom suffered from autism. However, the court declined to reduce the sentence any further, citing the need to promote respect for the law, to provide just punishment, to afford adequate deterrence to criminal conduct, and to protect the public.

Nagle filed a timely notice of appeal on June 2, 2005, arguing that the District Court erred in finding her confession to be voluntary and that her sentence was unreasonable, given her family obligations.

## II.

We have jurisdiction under 18 U.S.C. § 3742(a)(1), which provides appellate jurisdiction over sentences imposed in violation of law, and under 28 U.S.C. § 1291, which provides appellate jurisdiction from all final decisions of U.S. district courts. The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231, which confers jurisdiction over all offenses against federal law.

We exercise plenary review over questions of law and accept a district court's findings of fact unless clearly erroneous. *See Arizona v. Fulminante*, 499 U.S. 279 (1991); *United States v. Swint*, 15 F.3d 286 (3d Cir. 1994). We review sentences for reasonableness, applying the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Booker*, 543 U.S. 220, 261-62 (2005). A sentence is reasonable if the record demonstrates that the sentencing court gave meaningful consideration to these factors. *See United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006).

However, we lack jurisdiction to review the extent of a district court's downward departure from the Sentencing Guidelines. *See Cooper*, 437 F.3d at 333; *United States v. Khalil*, 132 F.3d 897, 898 (3d Cir. 1997).

**III.**

The two issues in this appeal are (1) whether Nagle's confession was voluntary and (2) whether her sentence was reasonable.

**A.**

Nagle argues that her confession was involuntary because it resulted from psychological coercion. Def. Br. at 11. After she was arrested and informed of her *Miranda* rights, Nagle asserted her right to counsel. Nicholson was also arrested and detained in another room, where he submitted a written confession incriminating himself.

A postal inspector, who was in the room with Nagle told her, among other things, that Nicholson should "tell[] the truth to protect his family" and referred to the N.J. Division of Youth and Family Services. Def. Br. at 16. These statements occurred after Nagle requested to see an attorney.

Approximately two hours after Nagle's arrest, Nicholson (accompanied by a special agent) entered the room where Nagle was detained. Nicholson proceeded to plead with Nagle to "tell the truth [and d]o the right thing." Def. Br. at 14; App. at 13. The District Court found that Nagle "then looked up and said to the agents, I want to talk, can I write everything, yes, if it's the truth and she proceeded to do so." App. at 13. As a result of Nicholson's intervention, Nagle wrote a confession incriminating herself.

Nagle argues that these two factors – the postal inspector's statements after she invoked her right to counsel and Nicholson's emotional plea – constituted coercive

interrogation under the totality of circumstances. Def. Br. at 20.

The District Court held three suppression hearings on whether Nagle's confession was voluntary and issued rulings on two motions for reconsideration. Among other things, the court found that "merely placing suspects together does not constitute interrogation." App. at 15. Since "[t]his was Mr. Nicholson's request, by acceding to it, law enforcement officers were not initiating any subsequent interrogation." App. at 15. Having reviewed the comprehensive record, we hold that the court did not err in finding Nagle's confession to have been voluntary.

The facts established in the record in this case demonstrate that Nagle's confession was voluntary. She was not questioned by law enforcement after she requested to see an attorney and gave her confession on her own volition after her husband pleaded with her to tell the truth. As the Supreme Court found in a similar case, Nagle "was not subjected to compelling influences, psychological ploys, or direct questioning." *Arizona v. Mauro*, 481 U.S. 520, 529 (1987). We also "doubt that a suspect, told by officers that [her spouse] will be allowed to speak to [her], would feel that [she] was being coerced to incriminate [herself] in any way." *Id*. at 528. Thus, Nicholson's pleading with his wife to tell the truth, without any questioning or intervention by law enforcement, was not the kind of "psychological ploy that properly could be treated as the functional equivalent of interrogation." *Id.* at 527.

**B.**

With respect to her sentence, Nagle argues that the District Court's downward departure from a 41-51 month range under the Sentencing Guidelines to 18 months of imprisonment, due to Nagle's extraordinary family circumstances, was unreasonable because she should have been given the opportunity serve a non-custodial sentence of probation. As a mother of three children under the age of five, Nagle argues that she should not serve any time in prison for her crimes, especially given the fact that her husband Nicholson was sentenced to five years imprisonment.

The Government responds that this Court lacks jurisdiction to review the extent of a district court's downward departure from the Sentencing Guidelines. Based on well-established precedent in this and other circuits, we agree.[1] *See Cooper*, 437 F.3d at 333 ("We follow the Courts of Appeals for the First, Sixth, Eighth, Tenth, and Eleventh Circuits in declining to review, after *Booker*, a district court's decision to deny departure."); *Khalil*, 132 F.3d at 898 ("[W]e have no jurisdiction to review [a defendant's] appeal from the district court's discretionary downward departure of his sentence.").

**IV.**

---

[1] Moreover, as the Government argued in a May 29, 2007 letter to the Court, even if we had jurisdiction to review the downward departure, an appeal of this issue would have been dismissed as moot given Nagle's release from prison. *See United States v. Kissinger*, 309 F.3d 179, 181-81 (3d Cir. 2002).

For the foregoing reasons, we affirm the District Court's final judgment of conviction and sentence for conspiracy to commit insurance fraud and for making false distress signals, entered on May 25, 2005.